**Yvonne Hope LOPEZ,**
**Appellant (Defendant),**

**v.**

**STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 89–143.**

Supreme Court of Wyoming.

March 27, 1990.

Randy L. Royal, Greybull, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Steven C. Zentz, Student Intern, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

Yvonne Lopez (Lopez) challenges the sufficiency of the evidence in this case to establish the essential elements of the crime of obtaining property by false pretenses in violation of § 6–3–407(a), W.S. 1977 (June 1988 Repl.).[1] She was tried by

---

1. Section 6–3–407(a), W.S.1977 (June 1988 Repl.), provides in pertinent part:

"A person who knowingly obtains property from another person by false pretenses with intent to defraud the person is guilty of:

the judge without a jury and found guilty. Lopez contends that the evidence would, at most, justify a conviction for the offense of fraud by check, but is not sufficient to establish the crime of obtaining property by false pretenses. We agree with the district court that the evidence was adequate to establish all of the essential elements of the crime of obtaining property by false pretenses. The judgment and sentence are affirmed.

In her Brief of Appellant, Lopez states the issue to be:

"Was the evidence before the Court, sitting without a jury, sufficient to convict the Defendant of violating the terms and provisions of W.S. 6–3–407."

In her Summary of Argument, Lopez explains her position in this way:

"There was no evidence introduced by the prosecution and allowed by the Court or substantiated by the record, that the Defendant undertook any actions other than to write insufficient funds checks such that she would have been charged and convicted of check fraud in violation of W.S. 6–3–702. The Defendant's actions show a series of insufficient funds checks in violation of W.S. 6–3–702. The Defendant's actions show that at most, the Defendant is guilty of violating the check fraud statute, W.S. 6–3–702. There was insufficient evidence at trial that there was anything more than a simple expressed or implied statement that each of the checks was backed by sufficient funds. The false representations by the Defendant did not rise above the statement that the checks were backed by adequate funds and the Defendant while so susceptible to a charge and conviction of check fraud, was not chargeable and convictable of violation of W.S. 6–3–407."

In its statement of the issue, in the Brief for Appellee, the State of Wyoming says the issue is:

"(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00),

"Was the evidence before the court sufficient to convict appellant of violating W.S. § 6–3–407(a)?"

We begin with a review of the facts disclosed by the record. Lopez resided in Worland. On June 3, 1988, she opened a checking account at the First State Bank of Thermopolis (Thermopolis bank) with an initial deposit of $100. On the same day, she rented Post Office Box 341 at the Thermopolis post office and used that box as her address when opening the checking account at the Thermopolis bank. During the months of June and July of 1988, Lopez made deposits to, and withdrawals from, the account at the Thermopolis bank and also made withdrawals from, and deposits to, an account in her husband's name at the First National Bank of Worland (Worland bank). It was the practice of Lopez's husband to sign blank checks on his account and furnish them to Lopez, thus providing her access to funds in the account. The pattern of reciprocal withdrawals and deposits between the accounts at the two banks came to the attention of bank officers who recognized the possibility that there existed what is known in the banking business as a "check kiting" scheme.

The evidence established that this series of transfers included a transaction on June 5, 1988, when Lopez drew a check on the Thermopolis bank in the amount of $500 and deposited it in her husband's account at the Worland bank. On June 7, 1988, a check in the amount of $500 was drawn on the account at the Worland bank and deposited in Lopez's account in the Thermopolis bank. Similar transactions continued through the months of June and July, and officials at both of these banks became suspicious. The bank officers at the Worland bank were alerted when a bookkeeper at the bank perceived the pattern of transactions, while officers at the Thermopolis bank were alerted when the bank's computer reported the pattern of transactions. Some of these checks were returned to the banks because of insufficient funds to pay them when presented. By the time the

or both, if the value of the property is five hundred dollars ($500.00) or more, * * *."

banks put a stop to the transfers, based upon the suspicions aroused on the part of the banks' officers, the Thermopolis bank had lost $830.49.

On October 17, 1988, Lopez was charged with obtaining property by false pretenses in violation of § 6–3–407(a). She waived her right to a trial by jury, and a trial to the court was held on March 7, 1989. After finding Lopez guilty and receiving a presentence investigation report, the court sentenced her to a term of not less than two, nor more than four, years in the Wyoming Women's Center.

■ Our standard for arriving at a determination of the sufficiency of the evidence is to determine whether it is adequate to support a reasonable inference of guilt beyond a reasonable doubt to be drawn by the finder of fact, viewing the evidence in the light most favorable to the State. *Schiefer v. State*, 774 P.2d 133 (Wyo.1989); *Washington v. State*, 751 P.2d 384 (Wyo.1988). The test is the same, whether the case was tried to the court or to a jury. *Tennant v. State*, 776 P.2d 761 (Wyo.1989); *Schiefer; Fitzgerald v. State*, 599 P.2d 572 (Wyo.1979).

■ In order to demonstrate a violation of § 6–3–407(a), the State had to establish the following elements beyond a reasonable doubt:

(1) the pretenses;

(2) their falsity;

(3) the fact of obtaining property by reason of the pretenses;

(4) the knowledge of the accused of their falsity; and

(5) the intent to defraud.

*Miller v. State*, 732 P.2d 1054 (Wyo.1987); *Driver v. State*, 589 P.2d 391 (Wyo.1979).[2]

■ Lopez structures her argument upon the proposition that any evidence of pretenses and their falsity (elements 1 and 2) that was presented at her trial demonstrated nothing more than the knowing issuance of checks which were not paid because of insufficient funds or credit at the bank. Her contention is that the evidence was sufficient to convict her of fraud by check at the most,[3] but the evidence did not establish that she obtained property by false pretenses. She relies upon the evidence in the record, which did show that she wrote insufficient funds checks with knowledge of the lack of funds or credit to honor them, and she then invokes *Barker v. State*, 599 P.2d 1349 (Wyo.1979), to demonstrate the difference between these two crimes in the light of the evidence. Her reliance on *Barker* is misplaced.

In *Barker*, we identified two factors that differentiate the crimes of fraud by check and of obtaining property by false pretenses. We said that obtaining property by false pretenses requires something more than "the mere writing of a bad check and a simple express or implied assurance that the check was good." *Barker*, 599 P.2d at 1352. The other distinction between these crimes is:

" * * * [O]btaining property is never a necessary element of violating the insufficient-funds statute, while the obtaining of property is always a necessary element of the false-pretenses enactment." *Barker*, 599 P.2d at 1351.

This record demonstrates that the pretenses and their falsity went much beyond the mere writing of bad checks coupled with an express or implied assurance that the checks were good. Lopez engaged in a pattern of deposits into her account at the Thermopolis bank with the representation and appearance that the source of these

2. *Miller v. State*, 732 P.2d 1054 (Wyo.1987), and *Driver v. State*, 589 P.2d 391 (Wyo.1979), were decided under Section 6–3–106, W.S.1977 (repealed ch. 75, Wyo. Sess. Laws 1982). That statute was replaced by Section 6–3–407, W.S. 1977 (June 1988 Repl.). The current statute defines the identical offense described in the former statute, which is obtaining property by false pretenses. The elements are the same. See *Miller*, 732 P.2d at 1062.

3. Section 6–3–702, W.S.1977 (June 1988 Repl.), provides, in pertinent part:

"(a) Any person who knowingly issues a check which is not paid because the drawer has insufficient funds or credit with the drawee has issued a fraudulent check * * *."

deposits was some source other than the ostensible funds she had withdrawn from the Thermopolis bank just slightly earlier. A consideration of "these matters in totality," as the trial court did, demands recognition that Lopez's timing in opening the account at the bank and renting the post office box on the same day, only two days before starting the scheme, together with the pattern of reciprocal transfers must contribute to a conclusion that the evidence was sufficient to establish the first two elements of obtaining property by false pretenses. Further, Lopez endeavored, by these pretenses, to show that there was money in the bank to honor the checks by relying on the "float" between the two bank accounts.

With respect to the third element, the fact of obtaining property by reason of the pretenses, no argument is made that Lopez did not obtain property from the Thermopolis bank. The First State Bank of Thermopolis clearly lost $830.49 because of Lopez's scheme. Lopez concedes that she received the money.

The fourth and fifth elements that are required to prove the crime of obtaining property by false pretenses, knowledge and intent, are also elements of the offense of fraud by check. Section 6–3–701, W.S.1977 (June 1988 Repl.), defines "knowingly issues," for the purpose of the offense of fraud by check, as "issuing a check to obtain property or to pay a debt *with intent to defraud or deceive any other person* (emphasis added)." Lopez, by contending that the evidence only established the elements of fraud by check, concedes that the fourth and fifth elements of the of-

fense of obtaining property by false pretenses were established.

Without regard to that concession, there indeed is sufficient evidence to establish these last two elements. Admittedly, her actions and representations in opening the account and transferring the funds back and forth between the two banks constitute circumstantial evidence. However, circumstantial evidence is adequate to establish the elements of the crime. *Murray v. State*, 671 P.2d 320 (Wyo.1983); *Fitzgerald*, 599 P.2d 572. The use of circumstantial evidence often is necessary to prove the elements of crimes involving specific intent as is the case here.

"* * * The mind of an alleged offender may be read from his acts, his conduct, his words and reasonable inferences which may be drawn from the circumstances of the case. To hold otherwise would create an impossible burden in a case requiring specific intent." *Schiefer*, 774 P.2d at 135.

We agree with the finding of guilty reached by the district court. Viewed in the light most favorable to the State of Wyoming, this evidence is more than sufficient to establish each and every element of the crime of obtaining property by false pretenses in violation of § 6–3–407(a).

The judgment and sentence are affirmed.